IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
CASE NO: 5:25-CV-593

| | |
|---|---|
| CHRISTIAN KING, by and through his<br>parent and next friend, TIMOTHY KING,<br>and TIMOTHY KING,<br>     Plaintiffs,<br><br>v.<br><br>WAKE COUNTY BOARD OF<br>EDUCATION, ROBERT TAYLOR,<br>CATTY MOORE, MARK SAVAGE,<br>ANTHONY MUTULLO, STACEY<br>ALSTON, LANCE CANTERBURY,<br>AND JAMES RENCHER, III,<br>     Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)   COMPLAINT<br>)<br>)<br>)<br>)<br>)<br>) |

NOW COMES Plaintiffs Christian King ("C.K."), by and through his parent and next friend, Timothy King ("T.K."), and T.K. in his individual capacity, bring this action to redress egregious, persistent, and ongoing discrimination, abuse, and denial of rights on the basis of disability.

<u>INTRODUCTION</u>

This complaint seeks to hold the Wake County Board of Education and its agents accountable for a pattern of physical, emotional, and verbal abuse, neglect, and systemic failures that deprived C.K., an individual with severe disabilities, of his right to a safe, inclusive, and non-discriminatory public education. Plaintiffs seek compensatory, punitive, and injunctive relief for violations of federal and state law, including Section 504 of the Rehabilitation Act of 1973, Title II of the Americans with Disabilities Act ("ADA"), the United States Constitution, and the North Carolina Constitution. The relief sought is necessary to remedy the harm suffered and to prevent further violations of the rights of disabled students entrusted to the care of the Defendants.

## PARTIES

1. Plaintiff C.K. is person with a disability, specifically autism spectrum disorder, and is a nonverbal, severely intellectually disabled student in the eleventh grade at East Wake High School ("EWHS"). At all times relevant, C.K. attended EWHS. He is a citizen and resident of Wake County, North Carolina.

2. Plaintiff T.K. is Plaintiff C.K.'s father and next friend bringing this action on behalf of C.K. and himself. T.K. has Letters of Appointment as Guardian of the Person for C.K, and C.K. has been deemed incompetent by Wake County Superior Court. T.K. is a citizen and resident of Wake County, North Carolina.

3. Defendant Wake County Board of Education (hereinafter "Defendant Board" or "the Board") is a body politic and local board of education as defined by Chapter 115C of the North Carolina General Statutes, with administrative direction and control over the Wake County Public School System ("WCPSS"). Its principal place of business is in Wake County, North Carolina.

4. Defendant, Dr. Robert P. Taylor, (hereinafter "Superintendent Taylor" or "Dr. Taylor") became superintendent of WCPSS in July 2023. As Superintendent, Dr. Taylor is responsible for implementing policies and rules adopted by the Department of Public Instruction and the State Board of Education, providing staff training, and ensuring compliance with federal and state laws. Dr. Taylor is sued in his individual capacity

5. Catty Moore ("Former Superintendent Moore" or "Defendant Moore") served as superintendent of WCPSS from 2018 to July 1, 2023. In her role, Defendant Moore was responsible for policy implementation, staff training, and compliance with federal and state laws. She is sued in her individual capacity.

6.     Dr. Mark Savage ("Defendant Savage" or "Dr. Savage") is the Eastern Area Superintendent for WCPSS, responsible for ensuring equal access to education at EWHS and carrying out educational policies. Dr. Savage is sued in his individual capacity.

7.     Defendant Dr. Anthony "A.J." Muttillo ("Associate Superintendent Muttillo" or "Dr. Muttillo") is the Associate Superintendent for Human Resources of WCPSS, with duties including reporting and preventing abusive treatment of students. Dr. Muttillo is sued in his individual capacity.

8.     Defendant Stacey Alston ("Principal Alston" or "Mr. Alston") was Principal of EWHS, responsible for investigating conduct violating Board policy or the Code of Student Conduct, and for reporting abuse. Mr. Alston is sued in his individual capacity

9.     Defendant Lance Canterbury ("Defendant Canterbury" or "Mr. Canterbury") is, upon information and belief, a Senior Administrator at WCPSS's Office of Security, with duties to report and prevent abusive treatment of students. Mr. Canterbury is sued in his individual capacity

10.     James Rencher, III (hereinafter "Defendant Rencher" or "Mr. Rencher") was, at all times relevant, a teacher within WCPSS where his abusive treatment of C.K. occurred. Mr. Rencher is sued in his individual capacity.

JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and § 1343(a) for civil rights violations. Supplemental jurisdiction over state law claims is pursuant to 28 U.S.C. § 1367.

12.     Venue is proper in the Eastern District of North Carolina under 28 U.S.C. § 1391(b), as the Defendants are located within this district and the events giving rise to the claims occurred here.

## FACTUAL ALLEGATIONS

### BACKGROUND AND DISABILITY STATUS

13.     Christian King ("C.K.") is a nonverbal student with autism spectrum disorder and severe intellectual disabilities. He is classified under the category of Intellectual Disability Severe ("ISDE") and receives specially designed instruction and related services through an Individualized Education Program ("IEP"). C.K. has spent most of his academic career in self-contained classrooms designed for students with significant disabilities.

14.     C.K. is recognized as a student with a disability under Section 504 of the Rehabilitation Act and as a "handicapped person" under the Americans with Disabilities Act ("ADA").

15.     Educational records describe C.K. as a "very happy, loving child, who enjoys attending school" prior to the events giving rise to this complaint.

### PATTERN OF ABUSE AND INSTITUTIONAL NEGLECT

*Fall 2022: Initial Incident and Concealment*

16.     In the fall of 2022, C.K. repeatedly returned home from school with unexplained bruises. His parents initially attributed these injuries to self-injurious behaviors associated with his disability.

17.     During the first week of school, Defendant James Rencher, III ("Mr. Rencher") physically restrained C.K. by wrapping his hands around C.K.'s ankles as he descended the stairs,

forcing him to move faster than he was able and causing C.K. to grab the rail to avoid falling. This incident was not reported to T.K.

18. In or about September 2022, Mr. Rencher "palmed" C.K.'s head, forcibly holding it down and compelling C.K. to look at a paper, effectively restraining his movement. Again, no notification was provided to T.K.

19. On or about October 11, 2022, Mr. Rencher violently pushed C.K. by the head toward the bathroom. This incident was also concealed from T.K.

20. In November 2022, T.K. received an anonymous letter postmarked from the Research Triangle Region, alleging that Mr. Rencher was verbally and physically abusing children in his class, making racist and inappropriate sexual comments, and that school administrators were aware but had not acted. The letter further stated that Mr. Rencher had been promoted to a better position in a more affluent part of the county.

21. Upon receiving the letter, T.K. immediately sought a meeting with school administrators. Defendants Stacey Alston ("Principal Alston"), Lance Canterbury ("Mr. Canterbury"), and Kendra Hill met with T.K., dismissed the letter as the work of a disgruntled employee, and assured T.K. that the allegations were unfounded. Mr. Canterbury claimed to have investigated and found no merit to the accusations. Defendant Alston echoed these assurances.

22. T.K. subsequently contacted Defendant Dr. Mark Savage ("Dr. Savage"), Eastern Area Superintendent, who also dismissed the allegations as false and attributed them to a disgruntled colleague. Relying on these assurances, T.K. took no further action at that time.

*2024: Discovery, Media Exposure and Criminal Proceedings*

23. In April 2024, T.K. learned through his employment at WRAL that another parent, Tessiah Smithen, had received a similar anonymous letter regarding abuse by Mr. Rencher. Both

parents realized their children were in the same self-contained classroom at EWHS and had received identical warnings.

24. T.K. and Ms. Smithen participated in an investigative report highlighting the abuse suffered by C.K. and other disabled students, and the Defendant Board and WCPSS to investigate or act.

25. In May 2024, the Wake County District Attorney's Office initiated a criminal case against Mr. Rencher, based in part on the abuse inflicted upon C.K.

26. Despite the allegations, Mr. Rencher reported that Defendant Board never communicated with him about the abuse. He was permitted to transfer to other WCPSS schools, including Herbert Atkins Middle School, and continued his employment until criminal charges were filed.

27. On June 10, 2024, Kendra D. Hill, Senior Director of Employee Relations for WCPSS, confirmed to T.K. that Mr. Rencher had abused C.K., recapping the incidents in an email and noting that the employee no longer worked for WCPSS. The email detailed the physical restraint, forced movement downstairs, and violent pushing of C.K.

28. On June 24, 2024, C.K.'s parents sent a records request and evidence preservation letter to WCPSS and Defendant Board through counsel.

29. On June 28, 2024, Mr. Rencher was arrested and charged with assaulting students with disabilities, including C.K. While criminal charges were pending, Mr. Rencher began working as a substitute teacher with Durham Public Schools ("DPS") and the Durham Public Schools Board of Education ("DPSBOE"). Defendants did not disclose to DPS or DPSBOE that Mr. Rencher was facing criminal charges related to abuse.

30.     In November 2024, during his criminal trial, Mr. Rencher testified that he was called into Principal Alston's office regarding the allegations but denied wrongdoing, and no further action was taken. He also testified that WCPSS Human Resources was not contacted, that no allegations were in his file, and that he was named "Teacher of the Week" during his last week at EWHS. Mr. Rencher was found guilty on six counts of assaulting persons with disabilities.

*Abuse at Stough Elementary School*

31.     In October 2022, Erica Flenner, a former teacher at Stough Elementary School, also under Defendant Board's control, reported a teacher abusing a child at that school.

32.     From 2022 through 2024, Ms. Flenner reported multiple allegations of child abuse by co-workers in ECS classrooms and other settings for disabled children. Instead of investigating, Defendant Board denied her requests for reasonable accommodations and created a hostile work environment.

33.     In November 2023, Ms. Flenner reported the abuse to Defendant Dr. Robert P. Taylor ("Dr. Taylor") and Area Superintendent Sedwick Williams, including concerns about discriminatory disciplinary practices and instances of verbal and physical child abuse, as well as racism.

34.     Defendants failed to notify parents of the abuse during the 2022-2023 school year. Instead, Ms. Flenner faced retaliation, including a negative performance review, exclusion from meetings, administrative leave, and eventual termination, while the reported abuser continued teaching.

### PATTERN OF CONCEALMENT, RETALIATION, AND DELIBERATE INDIFFERENCE

35.     The facts alleged in this complaint reveal not isolated incidents, but a persistent and systemic pattern of abuse, neglect, and concealment by the Defendant Board and its agents.

36. The Defendants' conduct was not merely negligent; it was characterized by deliberate indifference to the rights and safety of disabled students, in direct contravention of federal and state law, constitutional guarantees, and local policy mandates.

37. Defendants were repeatedly placed on actual notice of abusive conduct by Defendant Rencher, through direct reports from staff, anonymous letters, and parent inquiries.

38. Despite these warnings, Defendants failed to take any meaningful action to investigate, report, or remediate the abuse. Instead, they engaged in a pattern of denial, obfuscation, and retaliation against those who sought to expose the misconduct.

39. This institutional response reflects a culture of deliberate indifference, where the safety and dignity of disabled students were subordinated to the protection of the institution and its employees.

40. Defendants' actions and omissions constituted discrimination on the basis of disability in an education program receiving federal funds, in violation of Section 504 of the Rehabilitation Act and Title II of the ADA.

41. Plaintiffs C.K. and T.K. suffered injuries and damages due to Defendants' negligence, negligent infliction of emotional distress, civil assault, and battery under North Carolina law.

42. Defendants repeatedly failed to report, investigate, or take corrective action after learning of Mr. Rencher's abusive treatment of C.K. and other disabled students, despite mandatory reporting obligations under North Carolina law, Board policy, and administrative code.

43. Defendants knowingly placed C.K. and other vulnerable students in harm's way, demonstrating reckless indifference to their rights and safety. The pattern of obfuscation and concealment extended beyond C.K. to other students and staff who attempted to expose the abuse.

44. The institutional response was characterized by deliberate deception, retaliation against whistleblowers, and a systemic failure to protect disabled students from harm, resulting in ongoing and irreparable injury to C.K.'s education, physical and emotional well-being, and dignity.

## DAMAGES AND CONTINUING HARM

45. As a direct and proximate result of Defendants' conduct, C.K. suffered physical pain, psychological suffering, emotional distress, and loss of educational opportunity. Plaintiffs incurred medical bills, counseling expenses, and other costs for future psychological care.

46. The harm caused by Defendants' actions is ongoing, with permanent injury to C.K.'s education, well-being, and dignity, and a continuing threat to other disabled students under Defendant Board's care.

## STATE STATUTES AND ADMINISTRATIVE CODES

47. The Wake County Board of Education is a local board of education as defined by N.C. Gen. Stat. § 115C-36 et seq., with statutory duties to provide a sound basic education and to protect the welfare of students.

48. N.C. Gen. Stat. § 115C-288(g) imposes a mandatory duty on principals and other school officials to immediately report suspected criminal conduct, including child abuse, to law enforcement and the State Board of Education.

49. N.C. Gen. Stat. § 115C-40, 42 provides that local boards are separate corporate bodies that may sue and be sued. Governmental immunity may be waived by the procurement of commercial liability insurance. N.C. Gen. Stat. § 143-300.6 addresses the defense and indemnification of state employees.

50.     16 NCAC 06E .0107 and 16 NCAC 06C .0312 require administrators, including superintendents and personnel administrators, to report known or suspected abusive treatment of students and misconduct by licensed employees to the State Board of Education and law enforcement. Failure to report such misconduct is a felony and may result in suspension or revocation of licensure.

51.     The Administrative Code incorporates additional requirements for reporting suspected child abuse and threats to child safety, reinforcing the statutory obligations of school officials.

Constitutional Provisions

52.     Plaintiffs assert claims for violations of civil rights under the U.S. Constitution, including the right to equal protection and due process. These rights are enforceable under 42 U.S.C. § 1983, which provides a federal remedy for deprivation of constitutional rights by persons acting under color of state law.

53.     Article I, Section 15 of the North Carolina Constitution guarantees the right to a sound basic education for all children in North Carolina.

54.     Article 1, Section 10 of the North Carolina Constitution prohibits denial of equal protection and discrimination by the state. Plaintiffs may seek direct redress under the North Carolina Constitution when no adequate state law remedy exists, as recognized in *Corum v. University of North Carolina*, 330 N.C. 761 (1992).

Board Policies and Local Regulations

55.     Defendant Board Policy 4040/7310 requires immediate reporting of suspected criminal conduct and child abuse by school personnel, mirroring state law and administrative code

requirements. The policy mandates that administrators and staff act to protect students from abusive treatment and to report misconduct to appropriate authorities.

56. Defendant Boards' policies also set forth procedures for reporting criminal misconduct and disciplinary actions, including notification to law enforcement and the State Board of Education.

57. The legal and regulatory framework imposes overlapping and reinforcing duties on the Defendants to protect students with disabilities from abuse, discrimination, and denial of educational opportunity.

58. Federal statutes, state laws, constitutional provisions, and local policies collectively require prompt reporting, investigation, and remediation of abusive conduct, and prohibit retaliation against those who report or seek redress for such violations.

## CAUSES OF ACTION AND CLAIMS FOR RELIEF

### COUNT I: WAIVER OF GOVERNMENTAL IMMUNITY
(Against Defendant Board, in its Official Capacity)

59. Plaintiffs restate and reallege all preceding allegations as if fully set forth herein.

60. The Wake County Board of Education is a separate corporate body that may sue and be sued under N.C. Gen. Stat. § 115C-40, 42.

61. Defendant Board has waived governmental immunity by procuring excess liability insurance coverage through the North Carolina School Boards Trust ("NCSBT") and a licensed commercial insurance carrier, as established by *J.W. v. Johnston Cty. Bd. of Educ.*, No. 5:11-CV-707-D, 2012 WL 4425439 at *10 (E.D.N.C. Sept. 24, 2012) (quoting *Lail ex rel. Jestes v. Cleveland Cty. Bd. of Educ.*, 183 N.C. App. 554, 561 (2007)).

62.     Upon information and belief, Defendant Board has purchased commercial liability insurance for the relevant fiscal years, thereby waiving governmental immunity for the claims asserted herein.

63.     Plaintiffs' damages exceed the minimum coverage of Defendant Board's excess liability insurance.

64.     To the extent individual State employees are not covered by commercial liability insurance, the State is responsible for their defense and payment of judgments up to statutory limits under N.C. Gen. Stat. § 143-300.6.

COUNT II: WAIVER OF PUBLIC OFFICIAL IMMUNITY
(Defendants Taylor, Moore, Alston, Canterbury, Savage,
Mutillo, and Rencher, in their individual capacities)

65.     Plaintiffs restate and reallege all preceding allegations as if fully set forth herein.

66.     Defendants, acting in their individual capacities, waived public official immunity by failing to report and act on known abuse, demonstrating malice, gross negligence, and wanton disregard for student safety.

67.     North Carolina law (N.C. Gen. Stat. § 115C-288(g)), Board Policy 4040/7310, and the North Carolina Administrative Code (16 NCAC 06E .0107, 16 NCAC 06C .0312) require immediate reporting of suspected abuse and criminal conduct by school personnel.

68.     Defendants had actual notice of Defendant Rencher's abusive conduct and failed to report or intervene, acting with deliberate indifference and reckless disregard for the rights of disabled students.

69.     Public officials lose immunity when acting corruptly, maliciously, or outside the scope of their duties (*Smith v. Hefner*, 235 N.C. 1, 7 (1952); *Grad v. Kaasa*, 321 S.E.2d 888, 890 (N.C. 1984); *Bartley v. City of High Point*, 873 S.E.2d 525, 534 (N.C. 2022)).

70.     The conduct alleged in this complaint is not merely actionable; it is egregious and outrageous by any standard of decency.

71.     Defendant Rencher's repeated physical, verbal, and emotional abuse of nonverbal, severely disabled students—including violent pushing, physical restraint, and offensive contact—exceeds all bounds of conduct tolerated in a civilized society.

72.     The Board and its agents, by knowingly permitting this abuse to continue, and by failing to protect the victims, acted with reckless disregard for the rights and well-being of the most vulnerable children in their care.

73.     The repeated nature of the abuse, the institutional knowledge of its occurrence, and the deliberate efforts to conceal and minimize the harm all support a finding of actual and constructive malice.

74.     The law recognizes that public officials lose immunity when they act with wantonness, malice, or for their own benefit.

75.     Here, the Defendants' actions were motivated by a desire to avoid litigation, protect reputations, and preserve institutional interests at the expense of student safety.

76.     Defendants' conduct was wanton, malicious, and in bad faith, as evidenced by their deliberate concealment, deception, and failure to protect C.K. and other disabled students from known harm.

77.     Defendants' pattern of obfuscation, concealment, and retaliation against whistleblowers further supports the waiver of public official immunity.

COUNT III: DISCRIMINATION BASED ON DISABILITY IN VIOLATION OF
SECTION 504 OF THE REHABILITATION ACT 29 U.S.C. § 794, *et. seq.*
(Against Defendant Board, in its official capacity)

78.     Plaintiffs incorporate all preceding paragraphs as if fully stated herein.

79. Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a), prohibits discrimination against individuals with disabilities in programs or activities receiving federal financial assistance.

80. It mandates that no qualified individual with a disability shall, solely by reason of such disability, be excluded from participation in, denied the benefits of, or subjected to discrimination under any program or activity receiving federal funds.

81. The regulations implementing Section 504 (34 C.F.R. Part 104) require public school systems to provide equal access and reasonable accommodations to students with disabilities, and to prevent discriminatory practices that impede educational opportunity.

82. Defendant Board discriminated against C.K. by failing to address and remediate abusive treatment, thereby denying him equal access to education in violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a).

83. C.K. is a "handicapped person" and otherwise qualified to attend school in Defendant Board's district under 34 C.F.R. § 104.3(j)(1).

84. Defendant Board is a recipient of federal financial assistance and operates programs subject to Section 504.

85. Section 504 prohibits exclusion, denial of benefits, or discrimination against qualified individuals with disabilities in federally funded programs.

86. Defendant Board, from Fall 2022 through Spring 2024, excluded C.K. from participation, denied him benefits, and subjected him to discrimination solely on the basis of his disability.

87. Defendant Board knew of Mr. Rencher's abusive treatment of C.K., which precluded him from accessing his education, and failed to act.

88.    The abusive treatment included physical restraint, forced movement, violent pushing, and verbal/emotional abuse, all during instructional time and in response to manifestations of C.K.'s disability.

89.    Defendant Board's failure to address these practices demonstrates gross misjudgment and bad faith, departing from all standards of professional judgment.

90.    Defendant Board is vicariously liable for the bad faith actions and gross misjudgment of its subordinates, including failure to report, investigate, or take corrective action.

91.    As a direct and proximate result, Plaintiffs sustained damages in excess of $100,000, including physical pain, psychological suffering, medical expenses, and attorney's fees.

COUNT IV: DISCRIMINATION BASED ON DISABILITY IN VIOLATION OF
THE AMERICANS WITH DISABILITIES ACT 42 U.S.C. § 12101, <em>et. seq.</em>
(Against Defendant Board, in its official capacity)

92.    Plaintiffs incorporate all preceding paragraphs as if fully stated herein.

93.    Title II of the ADA, 42 U.S.C. § 12131 et seq., extends protections against disability-based discrimination to all services, programs, and activities of public entities, including public schools.

94.    Under 42 U.S.C. § 12132, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

95.    The ADA's implementing regulations (28 C.F.R. Part 35) require public entities to take appropriate steps to prevent discrimination and to ensure effective communication and access for individuals with disabilities.

96.    The rights and obligations under Title II of the ADA and Section 504 are closely related, and courts analyze claims under both statutes using similar standards

97.   Defendant Board violated Title II of the ADA, 42 U.S.C. § 12131 et seq., by subjecting C.K. to discriminatory treatment based on his disability and denying him the benefits of educational programs.

98.   C.K. is a "qualified individual with a disability" under the ADA.

99.   Defendant Board is a "public entity" within the meaning of the ADA.

100.   Title II of the ADA and Section 504 are closely related, and Defendant Board's conduct violated both statutes.

101.   Defendant Board excluded C.K. from participation and denied him benefits of services, programs, and activities, motivated by his disability.

102.   C.K.'s non-disabled peers did not experience the same abusive punishments for similar behaviors.

103.   As a direct and proximate result, Plaintiffs sustained damages in excess of $100,000, including physical pain, psychological suffering, medical expenses, and attorney's fees.

COUNT V: VIOLATION OF THE NORTH CAROLINA CONSTITUTION
(Against Defendant Board, in its Official Capacity, and
Individual Defendants in their Official Capacities)

104.    Plaintiffs incorporate all preceding paragraphs as if fully stated herein.

105.   Article I, Section 15 of the North Carolina Constitution guarantees the right to a sound basic education; Article I, Section 19 guarantees equal protection and prohibits discrimination by the state.

106.   Defendant Board and its employees are state actors subject to these constitutional requirements.

107.   Defendants violated C.K.'s constitutional rights by failing to protect him from physical abuse, knowingly allowing the aggressor to remain in his educational environment,

denying T.K. access to critical information, and failing to provide effective remedy or accountability.

108.     These violations occurred under color of state law, through policies, customs, and inactions reflecting deliberate indifference or intentional discrimination.

109.     The harm is ongoing and irreparable, resulting in permanent injury to C.K.'s education, well-being, and dignity.

110.     Plaintiffs seek direct redress under the North Carolina Constitution pursuant to *Corum v. University of North Carolina*, 330 N.C. 761, 782 (1992), as no adequate state law remedy exists.

111.     To the extent sovereign immunity and/or statutory limitations bar or restrict Plaintiffs' ability to obtain full relief under common law tort claims, redress pursuant to the North Carolina constitution is necessary and proper.  Accordingly, Plaintiffs assert a direct cause of action under the North Carolina Constitution to vindicate their fundamental rights.

COUNT VI: NEGLIGENCE
(Defendants Alston, Savage, Muttillo
and Alston, in their individual capacities)

112.     Plaintiffs incorporate all preceding paragraphs as if fully stated herein.

113.     Negligence requires a legal duty, breach, and injury proximately caused by the breach (*Fussell v. N.C. Farm Bureau Mut. Ins. Co.*, 695 S.E.2d 437, 440 (N.C. Sup. Ct. 2010)).

114.     North Carolina law, Board policy, and administrative code impose clear, mandatory duties on school officials to report suspected abuse and criminal conduct involving students.

115.     N.C. Gen. Stat. § 115C-288(g), Policy 4040/7310, and 16 NCAC 06E .0107 require immediate reporting to law enforcement and the State Board of Education.

116. The failure to report such misconduct is not only a breach of professional duty, but a felony offense that may result in suspension or revocation of licensure.

117. Defendants Alston, Canterbury, Savage, Muttillo, Taylor, and Moore were all aware of credible allegations of abuse by Defendant Rencher.

118. Their collective failure to report, investigate, or intervene constitutes a willful violation of their statutory and professional obligations.

119. The law does not permit school officials to exercise discretion in the face of suspected abuse; the duty to report is absolute and nondelegable.

120. The Defendants' conscious choice to ignore, conceal, and misrepresent the facts demonstrates malice, bad faith, and gross negligence, warranting the denial of public official immunity and the imposition of liability.

121. Defendants breached their duty of care by allowing Defendant Rencher to continue working with disabled students despite knowledge of his abusive conduct.

122. Defendant Alston was negligent in supervising Rencher and ensuring proper training for working with students with disabilities.

123. The Defendants' response to reports of abuse was not limited to passive neglect.

124. Instead, they actively concealed the misconduct, deceived parents, and retaliated against whistleblowers.

125. When T.K. presented the anonymous letter detailing abuse, Defendants Alston and Canterbury dismissed the allegations as the work of a disgruntled employee, assured T.K. that there was "nothing to worry about," and discouraged further inquiry.

126. Defendant Savage echoed these assurances, reinforcing the institutional cover-up.

127. This pattern of concealment extended to other staff members, such as Erica Flenner, who reported abuse at Stough Elementary School. Rather than investigating her claims, the Board denied her requests for reasonable accommodations, subjected her to a hostile work environment, and ultimately terminated her employment. The actual abuser continued teaching without consequence. Such retaliation against those who seek to protect vulnerable students is itself a form of institutional malice, designed to silence dissent and perpetuate a culture of impunity.

128. Defendants failed to report Rencher's assault and abusive treatment to law enforcement and the State Board of Education, as required by law and Board policy.

129. Defendants acted maliciously and corruptly by choosing not to protect C.K. and report Rencher, endorsing his behavior and intending harm to disabled students.

130. As a result, C.K. suffered continued abuse, emotional damage, and loss of educational opportunity.

131. Defendants' actions and omissions were the proximate cause of C.K.'s injuries, including lost educational opportunity, emotional harm, physical harm, and psychological damage.

132. Plaintiffs sustained damages in excess of $100,000.00, including physical pain, psychological suffering, medical expenses, and attorney's fees.

COUNT VII: NEGLIGENCE
(Defendant Rencher, in his individual capacity)

133. Plaintiffs incorporate all preceding paragraphs as if fully stated herein.

134. Defendant Rencher had a legal duty to provide C.K. with a free appropriate public education free from physical, mental, and emotional abuse.

135. Rencher breached his duty by physically, verbally, and mentally abusing nonverbal disabled students entrusted to his care.

136.    As a result, C.K. was injured as alleged herein.

137.    Plaintiffs sustained damages in excess of $100,000.00, including physical pain, psychological suffering, medical expenses, and attorney's fees.

<u>COUNT VIII: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS</u>
(Against Defendants Taylor, Moore, Alston, and
Rencher, in their individual capacities)

138.    Plaintiffs incorporate all preceding paragraphs as if fully stated herein.

139.    Defendants negligently engaged in conduct that was reasonably foreseeable to cause C.K. severe emotional distress and did, in fact, cause such distress (*Acosta v. Byrum*, 180 N.C. App. 562, 667 (2006); *Johnson v. Ruark Obstetrics*, 327 N.C. 283, 304, 395 S.E.2d 85, 97 (1990)).

140.    Defendant Rencher's physically, verbally, and emotionally abusive treatment of C.K. caused severe emotional distress.

141.    Other Defendants failed to protect C.K. from injury and damage, knowing of Rencher's abusive treatment and failing to intercede or investigate.

142.    The remaining individually named Defendants endorsed Defendant Rencher's behavior, knowing continued harm would befall disabled students.

143.    C.K. suffered severe emotional distress, including aversion to attending school, increased maladaptive behaviors, and frequent crying.

144.    Defendants' negligence was a proximate cause of C.K.'s severe emotional distress.

145.    Plaintiffs sustained damages in excess of $100,000.00, including physical pain, psychological suffering, medical expenses, and attorney's fees.

<u>COUNTY IX: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS</u>
(Against Defendant Rencher, in his individual capacity)

146.    Plaintiffs incorporate all preceding paragraphs as if fully stated herein.

147. Defendant Rencher engaged in extreme and outrageous conduct, exceeding all bounds of decency tolerated in a civilized society.

148. Rencher acted with intent or reckless disregard for the likelihood of causing severe emotional distress to C.K.

149. Rencher's conduct was the direct and proximate cause of C.K.'s severe emotional distress, including anxiety, depression, insomnia, and physical symptoms.

150. The distress experienced by C.K. is of such intensity and duration that no reasonable person could be expected to endure it.

## COUNT X: ASSAULT AND BATTERY
(Against Defendant Rencher, in his individual capacity)

151. Plaintiffs incorporate all preceding paragraphs as if fully stated herein.

152. Defendant Rencher, by intentional acts and displays of force, threatened C.K. with immediate bodily injury, including physical restraint, violent pushing, and offensive contact.

153. Rencher's actions created a reasonable apprehension of immediate harmful or offensive contact and caused actual bodily contact without C.K.'s consent.

154. Rencher's conduct was malicious, willful, and wanton, and he knew or should have known such conduct was likely to result in injury.

155. As a direct and proximate result, C.K. was injured and is entitled to compensatory and punitive damages.

156. The actions by Defendant Rencher were sufficient to create a reasonable apprehension of immediate harmful or offensive contact to C.K.

157. C.K. was placed fear of immediate harmful or offensive contact as a result of Defendant Rencher's actions.

158.     Defendant Rencher intentionally caused bodily contact with Plaintiff C.K., which offended a reasonable sense of personal dignity and caused physical pain or injury, and occurred without C.K.'s consent.

159.     Defendant Rencher's conduct toward Plaintiff was malicious, willful and wanton.

160.     Defendant Rencher knew or should have known that such conduct was reasonably likely to result in injury to C.K.

161.     Plaintiff C.K. was injured as a direct and proximate result of Defendant Rencher's actions and inactions, entitling him to receive compensatory and punitive damages.

<u>CONCLUSION</u>

Plaintiffs request judgment against the Defendants for damages exceeding $100,000.00, including, *inter alia*, compensatory damages, attorney's fees, and any other relief deemed just and proper by the Court.  Plaintiffs request compensatory damages for the physical, psychological, and emotional injuries sustained by C.K. as a direct and proximate result of Defendants' conduct. These damages include, but are not limited to, past, present, and future physical pain and suffering, psychological impairment and emotional distress, medical expenses, counseling, and costs for future psychological care, loss of educational opportunity and related academic harm, and any other actual damages proven at trial.  Plaintiffs seek punitive damages against those Defendants whose conduct was malicious, willful, wanton, or in reckless disregard of the rights and safety of C.K. The repeated pattern of concealment, retaliation, and deliberate indifference to known abuse warrants the imposition of punitive damages to deter future misconduct and to punish egregious violations of law

Plaintiffs request damages for the severe emotional distress suffered by C.K., including anxiety, depression, insomnia, increased maladaptive behaviors, and aversion to attending school.

The emotional harm is ongoing and irreparable and was reasonably foreseeable as a consequence of Defendants' actions and omissions. Plaintiffs seek injunctive relief to prevent further abuse, discrimination, and retaliation against disabled students in the Wake County Public School System. The requested equitable remedies include, but are not limited to, an order requiring Defendants to implement and enforce policies and procedures for the prompt reporting, investigation, and remediation of abuse and discrimination, mandatory training for all staff and administrators on disability rights, mandatory reporting obligations, and anti-retaliation protections, appointment of an independent monitor to oversee compliance with federal and state law regarding the treatment of disabled students, preservation and production of all relevant records and evidence pertaining to the allegations in this complaint, and any other equitable relief deemed necessary and proper by the Court to ensure the safety and dignity of disabled students.

Finally, Plaintiffs seek an award of reasonable attorney's fees and costs pursuant to applicable federal and state statutes, including Section 504 of the Rehabilitation Act and the Americans with Disabilities Act, as well as any other statutory or equitable basis for such an award

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in their favor and grant the following relief:

1. Award compensatory damages in an amount to be determined at trial, but not less than $100,000.00;

2. Award punitive damages against those Defendants whose conduct was malicious, willful, or wanton;

3. Award damages for emotional distress and psychological harm;

4. Issue injunctive and equitable relief as set forth above, including orders for policy reform, training, and independent monitoring;

5. Award reasonable attorney's fees and costs; and

6. Grant such other and further relief as the Court deems just and proper

JURY DEMAND

Plaintiffs hereby demand a trial by jury.

Respectfully submitted, this the 17th day of September, 2025.

/s/ Neubia L. Harris
Neubia L. Harris
N.C. Bar No.: 42069
The Law Office of Neubia L. Harris, PLLC
312 W. Millbrook Road, Ste. 141
Raleigh, NC 27609
(919) 526-0500 (telephone)
(919) 589-3935 (facsimile)
neubia@neubiaharrislaw.com
*Attorneys for Plaintiff*